IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE VALLEY WHOLESALE** | : | |
| **FLORIST, INC.** | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 05-309 |
| **TEN PENNIES FLORIST, INC. ET AL.** | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

**Tucker, J.**                                                                                           **December 1, 2005**

Presently before this Court is Plaintiff Delaware Valley Wholesale Florist, Inc.'s Motion for Summary Judgment (Doc. 13). For the reasons set forth below, upon consideration of Plaintiff's Motion and Defendants' Response (Doc. 16), this Court will grant Plaintiff's Motion.

## BACKGROUND

From the evidence of record, taken in a light most favorable to the Defendants, the pertinent facts are as follows. Plaintiff brings this action for breach of contract, promissory estoppel and unjust enrichment, *inter alia*, before this court based on diversity jurisdiction.

For a period of time prior to 1992, Ten Pennies Florist, Ltd. ("Ltd.") bought flowers and related products from Delaware Valley Wholesale Florist, Inc. ("DVWF"). Ltd. agreed to pay for the items as ordered. Defendants Gerald and Ana Catania were the sole stockholders, directors, and officers of Ltd. (Ana Catania Dep. 32, 42-43, Sept. 27, 2005.) During 1991, Ltd. experienced financial difficulties, and dissolved by early 1992. (Ana Catania Dep. 9.) On May 5, 1991, Mr. and Mrs. Catania signed a Personal Guaranty for the purchases from DVWF.

(Gerald Catania Dep. 32, Sept. 21, 2005.) On or about February 10, 1992, the Catanias created Ten Pennies Florist, Inc. ("Ten Pennies") as the successor to Ltd. (Bruno Fiorenza Dep. 10, 28-29, 31, Sept. 27, 2005.) Mrs. Catania has been and is the sole shareholder, president, and CEO of Ten Pennies (Ana Catatnia Dep. 6, 11), and Mr. Catania has been and is the vice-president of Ten Pennies (Gerald Catania Dep. 9.) Ten Pennies continued the business of Ltd., selling to the same customers, operating out of the same location, and using the same telephone number. (Gerald Catania Dep. 20-21.) In 1993, Ten Pennies issued checks from its checking account to DVWF for Ltd.'s account. (Pl.'s Exh. F and Ana Catania Dep. 26-30.)

Ultimately, the Defendants stopped paying for the flowers and related products. While the Defendants admit that the parties have entered into contracts and one was entered into prior to 1992, they deny that the alleged contract prior to 1992 is related to the current debt of $161,649.28 alleged in the instant litigation. (Defs.'Ans. ¶¶ 9, 11.) Specifically, Defendants aver that the personal guarantee is not related to any current outstanding debt, but is related to an arrangement that preceded any current debt, and no personal guarantee exists as to any current debt balance owed by Defendants.

The amounts charged by Plaintiff for the flowers and other products sold to Defendants were reasonable and customary, and the Defendants agreed to pay those rates. Defendants continued to make nominal payments of about $500 per month to Plaintiff, but at that rate (without interest) it would take over fifteen (15) years for Defendants to pay off their account. Despite Plaintiff's demand for full payment, Defendants have failed to pay.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW,

Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### DISCUSSION

Plaintiff asks this Court to grant summary judgment in its favor because (1) the Catania's signed the Personal Guaranty; (2) Defendants did not inform DVWF of the change in form of entity of Ten Pennies, if at all, until after the fact; (3) the ownership, business, location and telephone number of Ten Pennies have remained the same; (4) Defendants never revoked the Personal Guaranty, if ever, until years after the underlying debt was incurred; and (5) Defendants admit ordering, receiving and agreeing to the prices charged for all of the flowers and other products which are the subject of this suit.

At its core, the matter now before the Court turns on whether there is any triable issue of fact as to whether the Catanias entered into the Personal Guaranty with Plaintiff, and whether the Catanias as owners of Ten Pennies intended to be bound by the terms of the contract they entered as owners of Ltd.

Under Pennsylvania law, guaranty contracts are subject to the same rules of interpretation as other agreements, and "the paramount goal of contract interpretation is to determine the intent of the parties." Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc., 273 F.3d 332, 335 (3d Cir. 2001) (citing Meeting House Lane, Ltd. v. Melso, 628 A.2d 854, 857 (Pa. Super. Ct. 1993)). Furthermore, "a cause of action for breach of contract under Pennsylvania law has three elements: '(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages.'" Gazarov v. Diocese of Erie, 80 Fed. Appx.

202, 206 (3d Cir. 2003) (non-precedential) (quoting Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. Ct. 2000)).

It is uncontested that a contract in the form of a Personal Guaranty exists between Plaintiff and the Catanias. As to the duties imposed by the contract, Plaintiff argues, and Defendants disagree, that the Catanias had a duty to guarantee debts to DVWF until the Catanias notified DVWF in writing that they wished to cancel the Personal Guaranty.[1] While Plaintiff relies on the language of the Personal Guaranty in support of its assertion, the Catanias offer no objective evidence to support their flimsy contention that they did not intend to be bound by all the terms of the agreement.

"Pennsylvania contract law begins with the 'firmly settled' point that 'the intent of the parties to a written contract is contained in the writing itself.'" Bohler-Uddenholm Am., Inc. v.

---

[1] The Personal Guaranty provides in relevant part:

1. Guaranty.
   By signing this Guaranty, you guarantee that every debt the Borrower owes DVWF now, or may owe DVWF in the future, will be paid when it is due, no matter what may happen. This means that DVWF can demand payment from you if the Borrower fails to pay what the Borrower owes DVWF.

2. Obligations Guaranteed.
   This guaranty covers every kind of debt. It covers credit DVWF extends to the Borrower, interest on all the Borrower's debts to DVWF, and all other obligations that Borrower owes to DVWF . . . .

3. Continuing Effect.
   This Guaranty will continue to be in effect until DVWF has received from you a written notice canceling the Guaranty. A notice of cancellation will not affect your liability for any Obligation that the Borrower already owes DVWF at that time. The notice of cancellation must be addressed to DVWF at the above address.

. . . .

8. Other Sources of Payment.
   DVWF can demand payment from you without first seeking payment from the Borrower or any other Guarantor.

. . . .

11. Collection Costs.
    If DVWF sues you to collect the Obligations under this Guaranty, you will also pay all court costs, attorney's fees and collection costs allowed by law.

(Pl.'s Exh. A.)

Ellwood Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001) (quoting Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993). And where the terms of a written contract are clear and unambiguous, construction of the contract is a question of law for the Court. Id. at 92-93. "Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended. Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." Id. at 93. While the law in this jurisdiction allows a court to consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning," Defendants have offered no objective evidence to support a meaning that is alternative to the clear and unambiguous meaning of any of the terms of the Personal Guaranty that they signed.

    More importantly,

> (1) mere disagreement between the parties over the meaning of a term is insufficient to establish that term as ambiguous; (2) each party's proffered interpretation must be reasonable, in that there must be evidence in the contract to support the interpretation beyond the party's mere claim of ambiguity; and (3) the proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning.

Id. at 94. The Personal Guaranty in the instant case clearly defines all of the Catania's obligations under the agreement. To that end, the Court finds that the Personal Guaranty imposed an uncontroverted duty on the Catania's to guarantee the debts of Ten Pennies to DVWF, and that the Catania's have breached that duty to the tune of $161,649.28 in damages.

**CONCLUSION**

Defendants Ana and Gerald Catania deny owing any money personally to the Plaintiff, as they allege that they never agreed to be personally obligated to pay for the current debt. (Defs.' Resp. 2.) The Catanias say that they believed that the May 5, 1991 document did not apply to Ten Pennies, and that their personal obligation ended with their full and final payment on the old balance that Ltd. had with the Plaintiff. Id.

However, the Catania's have simply offered no factual evidence beyond their bare, unsubstantiated assertions to rebut Plaintiff's contention or genuinely dispute any issue of material fact upon which reasonable people might disagree as to whether the Catania's remain personally liable to Plaintiffs for the current debt. The Catanias have neither argued nor proffered evidence that they provided written notice of cancellation of the Guaranty as required by the agreement. Rather they have attempted to argue here, again offering no objective evidence, that they should not be bound by the Personal Guaranty that provides for its continuing effect, clearly and on its face, because there allegedly was no meeting of the minds between the Catanias and DVWF as to when the Guaranty would terminate. (Defs.' Resp. 3.)

Defendants admit that Ten Pennies owes the Plaintiff a new debt in the amount presented in Plaintiff's Complaint, and states further that Ten Pennies has never denied this from the inception of the litigation. (Defs.' Resp. 2.) In further acknowledgment of its debt, Ten Pennies states that it has made regular and consistent payments on that debt.

For the foregoing reasons, this Court will grant Plaintiffs' Motion for Summary Judgment. An appropriate Order follows.